UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>KAMLESH PATEL,<br>Defendant. | Criminal No. 15-10168-LTS |

**SENTENCING MEMORANDUM OF KAMLESH PATEL**

Defendant Kamlesh Patel comes before this Court with genuine remorse for his actions. He has acknowledged the conduct that he engaged in nearly six years ago, in a fit of pique, that led to the charges against him. While he cannot now reverse the clock and take back his actions, Mr. Patel, recognizing the significant financial impact those actions had, has attempted to make amends for them. He has already made a down payment of $15,000 toward the restitution he expects to be awarded in this case. And, over the years since his offenses, Mr. Patel has led the life of a model father, husband, son, brother, and community member, becoming more active in his religious community and supporting both his elderly parents and his brother's recently-immigrated family.

As discussed more fully below, Mr. Patel respectfully submits that a sentence of two years' probation with restitution is sufficient, but not greater than necessary, to achieve the purposes of sentencing in accordance with the factors set forth in 18 U.S.C. § 3553(a). Such a sentence would take into account the contrition and acceptance of responsibility Mr. Patel has displayed, as reflected by his guilty plea and payment of restitution, while not discounting the seriousness of his offenses. In addition, such a sentence would also allow Mr. Patel—who has

already suffered untold shame and embarrassment as a result of his participation in that offense, and who is at exceedingly low risk of recidivism—to continue to support his family, to continue to make payments toward the restitution he owes, and to continue serving his community through the volunteer and charitable works attested to by the friends and acquaintances who have submitted letters of support for him.

## I. Background

Mr. Patel is a loving father, husband, and son, a hardworking individual with strong ties to his local community, and a naturalized citizen who, over many years in the United States, has built a successful life for himself and his family. Beginning life in humble surroundings on a family farm in the state of Gujarat, India, through his determination and effort Mr. Patel earned a two-year college degree in electrical engineering, and had begun a highly-competitive advanced degree program before immigrating to the United States in 1998 to join his wife, Ila. While working full-time, Mr. Patel continued his education, eventually receiving a Microsoft Certification that led to his current job in the technology industry.

In 2002, Mr. Patel proudly became an American citizen, and three years later had saved enough money to bring his parents to this country as well. Just earlier this year, the entire family was reunited when Mr. Patel's younger brother and his family immigrated to the United States. All nine members of the extended family live together in Mr. Patel's three-bedroom home in Lowell, and are provided for by Mr. Patel's and Ila's joint income. Mr. Patel's dedication to his family is evident in the words of his wife, to whom he is "the most supportive husband and a friend who has helped me balance both my career and family," and who professes to be "very proud and thankful that he is my husband and a true mentor." *See* Letter of Ila Patel.

Yet Mr. Patel's "family extends far beyond the household." *See* Letter of Vipul Bhagat. He is a member of Bhakta Samaj USA, a nonprofit organization that seeks to preserve cultural ties for members of the Gujarati community, and volunteers his time to the organization. Through his involvement in Bhakta Samaj, Mr. Patel has developed a reputation as "caring, selfless, a family man, and above all else a genuinely good person who never hesitates to help even when the spotlight doesn't fall on him." *Id.* Similarly, as a devout member of the Dada Bhagwan spiritual movement, Mr. Patel volunteers his time assisting others on their spiritual journey. His fellow members of the Dada Bhagwan movement value his "personal character and generosity," and describe him as "always willing to lend a helping hand without any other expectation." *See* Letter of Rajendra C. Patel.

Mr. Patel is painfully aware that he has imperiled his accomplishments by his own actions. In October 2010, within a week after being abruptly terminated from his job at Baesis, Inc., a software sales, service and support company in Northborough, Massachusetts, Mr. Patel, irrationally angry at what he believed to have been unfair treatment, twice logged in to Baesis's computer network from his home and deleted certain information. As he had used his own login credentials on one of these occasions, he was easily identified and charged with unauthorized access to a computer in Massachusetts state court. On learning of these charges in January 2011, Mr. Patel—still unemployed after his firing in October—again lashed out, logging in to Baesis's network yet again and deleting additional information of Baesis and several of its customers, in the process doing much greater damage than he expected or intended.

Mr. Patel's guilty plea is a manifestation of genuine shame and regret for actions that have not only caused harm to the businesses he affected, but have inflicted grief and suffering on the people for whom he cares most. Those who know him personally attest to his deep and

profound sorrow for his actions,[1] and believe that he is genuinely motivated to improve himself.[2] Mr. Patel has not sought to hide his actions, but has taken the often difficult step of disclosing his conduct to his family, friends, and fellow community members. Together, those people have provided him with a strong support network that will help ensure that he does not reoffend.

Mr. Patel understands the severe impact his conduct has had, and will have, on his family and community. He recognizes and accepts that he must be punished for his actions, and has pled guilty to a three-count Indictment charging him with computer-crime offenses. In addition, he has already remitted $15,000 to the court—representing roughly 85% of his savings—in partial repayment of the restitution he expects to be awarded.

The parties and United States Probation agree that the appropriate base offense level is 6 pursuant to U.S.S.G. § 2B1.1(a)(2), that an 8-level increase is warranted under § 2B1.1(b)(1) for the amount of loss, that 4 levels should be added under § 2B1.1(b)(18)(A)(ii) because Mr. Patel's offenses of conviction include 18 U.S.C. § 1030(a)(5)(A), that another 2 levels should be added under § 3B1.3 for Mr. Patel's abuse of a position of trust and use of a special skill, and that the offense level should be reduced by 3 levels for Mr. Patel's acceptance of responsibility. Accordingly, Mr. Patel's total offense level is 17. Because Mr. Patel has no criminal history, the recommended Sentencing Guidelines range is 24-30 months.

Mr. Patel submits, however, that the Court should depart downward from the advisory Guidelines range, which is greater than necessary to satisfy the factors set forth in 18 U.S.C.

---

[1] *See, e.g.*, Letter of Niranjan Bhagat ("We know Kamlesh is very disheartened with the actions he took, and is very sorry."); Letter of Rajendra C. Patel ("Kamlesh H. Patel sincerely regrets what he did in the past. He is striving every day to come to terms with that poor choice and the real and painful consequences.").

[2] *See, e.g.*, Letter of Niranjan Bhagat ("He knows that he has made a mistake that he cannot take back but through his actions he has shown that he has learned from that mistake."); Letter of Atul Bhagat ("He is a good person who noticeably has been taking steps to better himself and those around him ever since the incident.").

§3553(a). As already discussed, and as will be discussed in more detail in the following section, the proposed sentence of two years' probation plus restitution would achieve the goals of sentencing without causing excess harm to Mr. Patel and his family.

## II. A Sentence of Two Years' Probation Is Sufficient But Not Greater than Necessary Under 18 U.S.C. §3553(a).

It is this Court's mandate to "impose a sentence sufficient, but not greater than necessary," to serve the purposes of sentencing. 18 U.S.C. § 3553(a). While the Guideline range is, of course, a factor the Court must consider in fashioning an appropriate sentence, it is only one factor among the many set forth in § 3553(a), and the Guidelines remain "merely advisory, which means that a district court has considerable leeway to impose a sentence that falls outside the range suggested." *United States v. Robinson*, 433 F.3d 31, 35 (1st Cir. 2005). The Guidelines "are still generalizations that can point to outcomes that may appear unreasonable to sentencing judges," and sentencing judges may "impose non-guideline sentences that override the guidelines, subject only to the ultimate requirement of reasonableness." *United States v. Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006).

Mr. Patel's individual history and characteristics, the nature and circumstances of the offense, and the other 18 U.S.C. § 3553(a) factors lead unerringly to the conclusion that a sentence anywhere close to the Guideline range of 24-30 months' imprisonment would be unreasonable—as the government's recommended sentence of 14 months' imprisonment recognizes.[3] Yet even the government's recommended sentence would be excessive. Given Mr. Patel's otherwise spotless background, his conduct over the course of the nearly six years since his offense, and his demonstrated commitment to paying restitution to the companies harmed by

[3] It bears noting that the government's recommended sentence of 14 months is within the range set forth in Zone B of the Sentencing Table. For Zone B offenses, the Guidelines Manual permits the minimum sentence to be satisfied by a probationary sentence, rather than a term of imprisonment. *See* U.S.S.G. § 5C1.1(c).

his conduct, a sentence of two years' probation, with payment of restitution, is "sufficient, but not greater than necessary" to achieve the purposes of sentencing in this case.

**A. Mr. Patel's History and Characteristics.**

Kamlesh Patel has come far from his humble beginnings. Raised on a small family farm in a village of only 500-600 residents in Gujarat, India, Mr. Patel had a challenging upbringing in what was sometimes referred to sardonically as India's "middle class"—those who did not earn enough to adequately provide for themselves, but did not earn so little that they qualified for public assistance. *See* Presentence Investigation Report ("PSR") ¶ 53. Food was sometimes hard to come by. On the few occasions that he and his younger brother received new shoes, those shoes were several sizes too large so they could be made to last for several years. Electricity in the one-bedroom home Mr. Patel shared with his parents and brother was sporadic, running water was available only one hour per day, and the family had no modern conveniences such as air conditioning, televisions, or computers.

Yet Mr. Patel pulled himself out of the "middle class." Commuting two hours each way to and from school, helping out on the farm after school, and completing his homework by candlelight, Mr. Patel graduated from high school before continuing his education at M.S. University of Baroda, where he earned the equivalent of an Associates' degree in electrical engineering. *Id.* ¶ 69. After completing that degree, Mr. Patel applied to enter a Bachelor's degree program at the same university, where he beat out nearly 500 other applicants for one of ten spots in the incoming class. *Id.*

Mr. Patel's life changed forever in January 1998, when he was introduced to his wife, Ila, by their parents, as a part of an arranged marriage. *Id.* ¶ 57; *see* Letter of Ila Patel. They married a month later, and Mr. Patel discontinued his studies and left India later that year to join her in

Lowell, Massachusetts, where she had moved at the age of nine. They have been together for the past eighteen years in a deeply loving, committed marriage, and have two children together: their daughter Nikki, a fifth-grader, and son Krish, a third-grader, in whom they have instilled the same values of hard work, kindness, and respect that have driven their own success.

Upon arriving in the United States, Mr. Patel found work in a low-paying assembly job. *See* Letter of Ila Patel. Working full time at that job, he still attended part-time classes at UMass-Lowell in an effort to complete his degree until receiving a promotion to test technician. While working as a test technician, Mr. Patel continued his education, eventually receiving a Microsoft Certification that led him to his current career in the technology industry. For a farm boy who had grown up with no computer in his home, this was truly a remarkable accomplishment.

Mr. Patel became a naturalized American citizen in 2002. By 2005, he had saved enough money to be able to free his parents from their exhausting life on the family farm and bring them to the United States as well, where they, too, have become naturalized American citizens. In May of this year, Mr. Patel's younger brother Divyesh and his family also immigrated to this country, reuniting the family again under one roof. All nine members of Mr. Patel's extended family—he, his wife and two children, his parents, and the three members of Divyesh's family—live together in Mr. Patel's three-bedroom home in Lowell. As Mr. Patel's father Harivadan only works sporadically and his mother Sarisvatiben, brother Divyesh, and Divyesh's wife Ankitaben are all unemployed, Mr. Patel's and Ila are the primary financial support for the entire household. As such, Mr. Patel's income is critical to his family's welfare. *See* Letter of Ila Patel ("I rely on my husband's income . . . . My husband's income is very important to our financial

well-being, and my income alone is not enough to cover our monthly expenses, and to provide the necessities to our family members.")

Before the events that led to the charges against him, Mr. Patel had never previously committed nor been charged with a crime. And it cannot be underscored enough that his commission of the offenses to which he has pled guilty was an aberration in an otherwise impeccable record. The letters submitted by Mr. Patel's family and friends laud his day-to-day generosity, kindness, and integrity, characteristics that are manifested in Mr. Patel's commitment to helping and serving others.

Much of Mr. Patel's compassion and devotion to service is driven by his deep and abiding spirituality. Since 2001, he has been active in the Dada Bhagwan Foundation, a non-sectarian spiritual movement devoted to the achievement of happiness and peace through self-realization. In the fifteen years he has been a part of this group, Mr. Patel has selflessly devoted his time and effort coordinating weekly services provided at the Foundation's centers in Dracut and Shrewsbury, which together serve over 100 individuals. *See* Letter of Rajendra C. Patel. And, beginning shortly after his commission of the underlying offenses, Mr. Patel, in an effort to improve himself, began to devote even more time to the Foundation. He is responsible for email communications with the members of both centers, and for the audio-video systems for the Dracut center. *Id.* He organizes and participates in youth activities, and takes a lead role managing special functions for the Foundation. *Id.*

As an active member of Bhakta Samaj USA, an organization dedicated to providing educational and religious resources for Gujarati immigrants, Mr. Patel is similarly devoted to his cultural community. He helps manage the organization's "extravagant" annual picnic, planning and organizing activities for the group and "help[ing] out wherever he is needed." Letter of

Vipul Bhagat. Through his dedication, he instilled life in the organization's youth program, even before he had children of his own, and continues to help out wherever he can. *See id.*

Despite the demands placed on him by his substantial involvement in these endeavors, Mr. Patel has remained, above all, a loving and devoted father, husband, son, and brother, as the letters submitted in support of him make abundantly clear. In the years since his offense, Mr. Patel has put his history behind him but has attempted to learn from it. For the past five years, he has held steady employment as a tech support engineer at Digital Guardian in Waltham, and has found solace with his family, friends, and community.

**B. The Nature and Circumstances of the Offense**

Mr. Patel makes no excuses for his conduct, which represented a serious lapse of judgment that is entirely contrary to the manner in which he ordinarily conducts himself. Yet to understand how someone with Mr. Patel's character and reputation could engage in the actions for which he is charged, some context is necessary. Mr. Patel's first intrusions into Baesis's computer systems followed closely on the heels of his termination by that company—ending what was, at the time, his longest period of continuous employment by one employer. At the time, Mr. Patel believed that he had been unfairly maligned by Baesis, which cited poor work performance as the reason for his termination when, in fact, it had to let him go as a result of financial difficulties being experienced by the company. Acting out of irrational anger, Mr. Patel lashed out at Baesis; an action he repeated when, several months later and still unemployed, he learned that Baesis had filed a criminal complaint against him.

The primary reason for Mr. Patel's offense level of 17 is the loss amount agreed to by the parties under U.S.S.G. § 2B1.1, which in this case accounts for nearly half of the total offense level. While Mr. Patel accepts that amount, and in no way seeks to minimize his conduct, he respectfully submits that it overstates the seriousness of his offense. To be sure, Mr. Patel's

intentions were not benign, but he believed he was engaging in the equivalent of spray-painting the outside walls of the business with graffiti. He neither expected nor intended to cause the significant damage that resulted.

The heavy emphasis on the concept of financial loss in determining punishment justifiably has been criticized for years. *See, e.g.*, *United States v. Emmenegger*, 329 F. Supp. 2d 416, 427 (S.D.N.Y. 2004) (remarking that "the guidelines provisions for theft and fraud place excessive weight on [the] single factor" of loss, and noting that "the amount stolen is a relatively weak indicator of the moral seriousness of the offense or the need for deterrence"); *see also* *United States v. Mueffelman*, 400 F. Supp. 2d 368, 373 (D. Mass. 2005) (quoting and agreeing with the remarks in *Emmenegger*); Ellen S. Podgor, *Throwing Away the Key*, 116 YALE L.J. POCKET PART 279, 280 (2007) (bemoaning how reliance on "the sentencing Guidelines' mathematical computation of loss" can result in "exorbitant sentences"). Indeed, District Judge Stefan Underhill, sitting by designation on the Court of Appeals for the Second Circuit, noted not long ago that "[t]he widespread perception [is] that the loss guideline is broken" and "leaves district judges without meaningful guidance in high-loss cases." *United States v. Corsey*, 723 F.3d 366, 378 (2d Cir. 2013) (remanding case to district court for resentencing and consideration of § 3553(a) factors). Here, Mr. Patel respectfully submits that the application of section 2B1.1's loss enhancements distorts the nature of his conduct.

**C. The Need to Provide Restitution to Victims of the Offense**

Mr. Patel has already taken steps toward repairing the damage he has done. As a down payment on the restitution he expects to be ordered in this case, he has delivered a cashier's check in the amount of $15,000 to the clerk's office. Mr. Patel is fully committed to paying as much as he possibly can to the businesses that were affected by his conduct. In the event that he is sentenced to a term of imprisonment, however, his ability to do that would be significantly

hampered. Mr. Patel would be unable to work while incarcerated, and would very likely lose his current job. Any wages earned following his release from prison would necessarily have to be devoted to rebuilding his family's finances, as his wife's income is not enough to support the needs of their extended family, and their savings have already been depleted by Mr. Patel's good-faith effort to begin paying the restitution he owes. Accordingly, the need to provide restitution in this case weighs against an incarcerative sentence.

**D. Two Years' Probation is a Sufficient Sentence that Satisfies the 3553 Factors.**

A sentence of two years' probation would be a serious one that will provide adequate deterrence, promote respect for the law, and otherwise serve the purposes of sentencing. The First Circuit has recognized that deterrence does not necessarily equate to incarceration, even in cases where the loss is in the millions of dollars. *See generally United States v. Prosperi*, 686 F. 3d 32 (1st Cir. 2012) (affirming sentences of six months home confinement and 3 years' probation despite GSR of 87 to 108 months). Judge Stearns' remarks at the sentencing hearing in *Prosperi* are equally applicable in this case:

> I think it is very difficult at times, for those of us who are judges or prosecutors or lawyers, to put ourselves in the shoes of a person with no prior experience with the criminal justice system who finds himself or herself accused of a crime. I do not think, sometimes, we fully recognize the anguish and the penalty and the burden that persons face when called to account, as these men are, for the wrong that they committed.

*Prosperi*, 686 F.3d at 48 (noting that the court's comments on the burdens of the criminal process on the particular defendants constituted the court's assessment that the punishment would provide adequate specific deterrence).

Like the defendant in *Prosperi*, Mr. Patel comes before this Court with no prior criminal record. In private, he has suffered the humiliation of having to tell his wife, parents, and friends that he committed a serious offense, and to seek financial assistance from friends to extricate

himself from the problem he created. In public, he has suffered the reputational damage that comes from being charged in a federal offense; news of his guilty plea has already been circulated among the Indian community.[4] His stature in his community has been severely damaged.

As the letters submitted in support of Mr. Patel by his family and others who know him vividly illustrate, the "anguish and the penalty and the burden" associated with this case have already been significant. A prison sentence is simply not necessary to specifically deter him from committing another crime. Nor is it necessary to protect the public, as the likelihood that Mr. Patel will reoffend is exceedingly slim. As already discussed, he has a strong support network of family and friends to whom he has turned in this difficult time. Although Mr. Patel has had criminal charges related to his conduct looming over him for nearly six years now, he has remained on a straight and narrow path, and has showed no sign that he is at any present or future risk of recidivism.

The government will surely argue that Mr. Patel must be imprisoned for the reason of general, not specific, deterrence. While the Court should and must consider the general deterrent effect of Mr. Patel's sentence, the government would be wrong to insist that only imprisonment would serve the purpose of general deterrence. For the rest of his life, Mr. Patel will suffer the various legal and societal collateral consequences of being a convicted felon. In connection with those charges, he has had to surrender nearly all of his savings to pay only a small portion of the restitution he will owe, and will be forced to pay restitution for years to come. These

[4] *See, e.g.*, *Lowell's Kamlesh Patel Admits Hacking Into Companies' Computers, Guilty of Revenge Cyberattack*, INDIA NEW ENGLAND NEWS, July 7, 2016, available at http://indianewengland.com/2016/07/lowells-kamlesh-patel-admits-hacking-companies-computers-guilty-revenge-cyberattack/ (last visited October 5, 2016).

consequences, in addition to a sentence of two years' probation, are sufficient, but not greater than necessary, to provide general deterrence.

Furthermore, because of Mr. Patel's family circumstances, imprisonment in this case would be a particularly onerous punishment. As the letters submitted in support of him attest, Mr. Patel is a dedicated family man, and, together with his wife Ila, supports all nine members of their extended family. While his father works sporadically and Ila is employed full-time, Mr. Patel's income is vital to the family's economic well-being. *See* Letter of Ila Patel. It is no exaggeration to say that if the family loses Mr. Patel's income, they will be financially devastated. This Court "may take idiosyncratic family circumstances into account, at least to some extent, in fashioning a variant sentence." *Prosperi*, 686 F.3d at 49 (noting personal circumstances of defendant's wife's illness, and co-defendant's daughter's disabilities, were a "permissible factor for the court to consider in imposing its variant sentences") (quoting *United States v. Martin*, 520 F.3d 87, 93 (1st Cir. 2008).

In sum, given Mr. Patel's personal history and characteristics, including his acceptance of responsibility; the nature of his offense; the slim likelihood of recidivism and the deterrent effect of the consequences Mr. Patel has already suffered and will continue to suffer due to his actions; and the other factors enumerated in § 3553(a), a sentence of two years' probation and restitution is "sufficient, but not greater than necessary," to serve the goals of sentencing.

## III. Conclusion

For all the foregoing reasons, Kamlesh Patel respectfully requests that the Court sentence him to two years' probation, plus restitution.

*<u>/s/ Mark Tyler Knights</u>*
Mark Tyler Knights (BBO #670991)
NIXON PEABODY LLP
900 Elm Street, 14th Floor
Manchester, NH 03101-2031
Tel: 603-628-4027
mknights@nixonpeabody.com

David A. Vicinanzo (*pro hac vice*)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Tel: 617-345-1000
dvicinanzo@nixonpeabody.com

*Counsel for Kamlesh Patel*

Dated: October 11, 2016

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document, filed electronically with the Court through the Electronic Case Files system, will be sent electronically to registered counsel of record as identified on the Notice of Electronic Filing ("NEF") and a paper copy will be sent via first class mail on October 11, 2016 to any counsel of record who are not registered on NEF.

*<u>/s/ Mark Tyler Knights</u>*
Mark Tyler Knights