UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
v. ) No. 15-CR-10168-LTS
)
KAMLESH PATEL, )
)
)
)
Defendant. )

GOVERNMENT'S SENTENCING MEMORANDUM

On July 6, 2016, Kamlesh Patel (hereinafter "Patel" or "defendant") pleaded guilty to each of three counts in an Indictment charging him with intentionally causing damage without authorization to protected computers in violation of 18 U.S.C. §§ 1030(a)(5)(A) (Counts 1 and 3), and identity theft in violation of 18 U.S.C. § 1028(a)(7) (Count 2). In a plea agreement, Patel and the United States stipulated to a total offense level of 17 and a Criminal History Category of I. The corresponding guidelines sentencing range ("GSR") is 24 to 30 months.

Consistent with its obligations under the plea agreement, and for the reasons set forth below, the United States requests that the Court vary from the otherwise applicable GSR and sentence Patel to 14 months' imprisonment, 12 months' supervised release, the required $300 special assessment, and to pay restitution totaling $137,896.65. This recommended sentence represents a more than 40 percent departure below the low end of the otherwise applicable GSR.

## I. The Offense

Patel was a senior software engineer at Baesis, Inc., a computer network maintenance and security consulting firm, between August 2007 and October 2010. (PSR ¶¶ 8, 76). Patel's position gave him "root" or administrative access to his company's networks and those of its

clients, including the victim Companies A, B, and C named in the Indictment. Patel's job was to use this access to install, monitor, and service his clients' IT infrastructure. (PSR ¶¶ 9 & 10).

Baesis fired Patel on October 15, 2010. (PSR ¶ 13). Whether it was in response to customer complaints about Patel's performance (as Baesis reported (PSR ¶ 13)) or the company's financial difficulties (as Patel insists (PSR ¶ 76)), it is undisputed that Patel was thereafter no longer authorized to access or to make any changes to the networks of Baesis and its clients.

*Patel Retaliates for his Termination*

A few days after he was let go, on October 18, 2010, Patel retaliated by using a colleague's credentials to log on to Baesis' computer network and to delete Baesis' image server – a computer that held images (i.e., the configurations of operating systems and software) that Baesis kept to service its clients' networks. (PSR ¶¶ 14-15). On October 20, 2010, Patel used his own credentials to log on to Baesis' network and to delete a computer directory that had been assigned to him when he was an employee. On November 16, 2010, Patel also logged in without authorization to the network of Company C, again using a colleague's credentials. (PSR ¶ 19).

Baesis spent just over $5,000 responding to the 2010 attacks, mainly in the time it took its employees to re-install and reconfigure the data Patel had deleted. (PSR ¶ 18). These early attacks would not have caught the attention of federal authorities, but for what Patel did next.

*Patel Retaliates After Being Charged Criminally*

Baesis reported the October 2010 attacks to the local police, which investigated and quickly learned that the intrusions had originated from IP addresses assigned to Patel's Lowell home. On or about January 7, 2011, the Northborough Police Department charged Patel in

Westborough District Court with unauthorized access to computer systems violation of M.G.L. c. 266, § 120F, a misdemeanor punishable by not more than 30 days in prison, a $1,000 fine, or both.

Upon learning that he had been charged criminally, Patel “again lashed out, logging in to Baesis’ network yet again and deleting additional information of Baesis and several of its customers, in the process doing much greater damage than he expected or intended.” (Def. Sent. Mem. at 3).

Patel’s January 30, 2011 attacks, however, were nothing like his earlier attacks. On January 29, 2011 – the day before – Patel downloaded specialized software, SpecOps Deploy, that could be used to administer and delete data structures. (PSR ¶ 20). “Data structures” are more than simply computer files, or a copy of computer image; they are the backbone of a computer network. Without data structures, data cannot move across the network, whether it is e-mail, an Internet phone call, or to give access to a company’s general ledger. When Patel logged into Baesis, Company A, Company B, and Company C in the days that followed and began to delete those structures, Baesis could only watch its clients’ networks go off line as they were trying to fight off the attack.

In the end, Baesis and Companies A, B, and C temporarily lost the use of their networks, including Internet and e-mail access. Company B also lost access to its primary telephone system for several weeks. Company B had to pay its employees who could not work during the service interruption, and the standstill that followed led to significant lost revenue. (PSR ¶ 22). Company B later terminated Baesis’ multi-year service contract because Baesis failed to protect Company B’s network.

The losses captured under USSG § 2B1.1 totaled $137,896.55, which included only the cost of responding to the intrusions; conducting damage assessments; restoring the networks to the condition they were in before the attacks, and Company B's wasted payroll during the time its network was down. (PSR ¶ 23).

## II. The Requested Sentence

The Court should sentence Patel to 14 months' imprisonment and 12 months supervised release. This sentence would reflect the magnitude of the January 2011 attacks and account for the need to deter system administrators, who are uniquely positioned because of their knowledge and the trust employers place in them to do serious damage to their employers' vital computer networks. At the same time, the below-GSR recommendation would account for Patel's moderate risk of recidivism, his clean work history since the attacks, and the family and community support described in Patel's memorandum.

### A. The Seriousness of the Offense

The most jarring aspect of Patel's conduct is that he attacked Baesis and its clients after learning that he had been criminally charged for the October 2010 intrusions. State and federal criminal statutes punish retaliation against victims with significant prison sentences. See M.G.L. c. 268 § 13B(1)(a) ("whoever, directly or indirectly, … attempts or causes … economic injury or property damage to … a person who is furthering a … criminal proceeding…."); 18 U.S.C. § 1513(e) ("whoever knowingly, and with intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or

possible commission of any Federal offense "). Patel thus escalated an employment dispute into a far more serious attack on the criminal justice process.

Patel's conduct is also more serious because he attacked his former clients, Companies A, B, and C. Even accepting that Patel had reason to be frustrated with Baesis, there is no excuse for inflicting financial losses on innocent third parties.

Moreover, the government respectfully disagrees with Patel's assessment that "he was engaging in the equivalent of spray-painting the outside walls of the business with graffiti." (Def. Sent. Mem. at 9-10.) While the October 2010 attacks may have sounded in nuisance, Patel had enough training and experience with his victims' networks to know the havoc he would cause by deleting data structures. Company B was without Internet and phone service for weeks and had to pay its employees for nearly $80,000 in lost time. Baesis had to spend approximately $50,000 in equipment and employee time to get its clients up and running again. The better analogy is that Patel cut the power and phone lines to these businesses and destructively forced the victims to digitally rebuild. The eight-level enhancement for loss (USSG § 2B1.1(b)(1)(E)) and the four-level enhancement for the destruction of data are both fairly applied here.[1]

Patel designed this attack to have destructive effect on Baesis and its clients. It was far more serious than digital vandalism.

---

[1] In many respects, the loss calculations understate the damage that Patel caused. While "loss" under 18 U.S.C. § 1030(e)(11) does not include consequential damages that are not directly related to an interruption of service, Company B nevertheless fired Baesis because of what Patel did, costing Baesis the remainder of its service contract. Company B too showed lost revenue when it compared its performance to quarters unaffected by Patel's attack. These losses, although they do not result in Guidelines enhancements, still serve as proxy for the seriousness of the attack.

B. General Deterrence

The requested sentence of imprisonment is also necessary in this case to deter others. Like Patel in this case, system engineers have increasingly important roles in the institutions they serve. They are trusted with unfettered access to corporate computer networks. They are uniquely trained to understand how their employers' digital infrastructure works, and are often the only employees who can solve network problems for their colleagues and clients. These same characteristics, however, make them uniquely suited to cause significant and expensive problems in an employment dispute (as Patel did in this case).

Patel will not be the last IT professional to be let go from his job. Nor will he be the last to retaliate against colleagues and clients on his way out the door and beyond. But a custodial sentence here is necessary to deter these well-trained and highly trusted employees from picking digital fights with their employers, especially where the employers trained and trusted these same employees to protect them from destructive attacks.

C. Patel's History and Characteristics

The government's below-Guidelines recommendation is intended to acknowledge Patel's most promising predictor against re-offending: his stable employment with Digital Guardian since October 2011. Yet custody as a specific deterrent should still be a part of the Court's sentence. How will Patel respond the next time he is laid off? What will happen if an expected bonus is smaller than hoped, or if a promised promotion doesn't come through? The government intends the custodial portion of Patel's ultimate sentence to serve as a reminder and deterrent for when life next disappoints him, as it inevitably will.

Patel can also draw upon significant family and community support during and following the completion of his sentence (as reflected in counsel's and friends' eloquent submissions on Patel's behalf). These are not traditionally factors that weigh against imprisonment, however, as they should have been reasons then for Patel not to lash out, and not to retaliate through his serious conduct described above. These relationships nevertheless offer Patel additional reason not to re-offend, which leads the government to support a below Guidelines sentence in this matter.

## III. Conclusion

For all of these reasons, the United States respectfully requests that the Court impose a sentence of 14 months' imprisonment, a special assessment of $300, 12 months' supervised release, and restitution in the amounts described in the PSR.

The government respectfully requests leave to respond to any specific variance motions that the defendant offers at oral argument at sentencing.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By: _/s/Seth B. Kosto______________________
Seth B. Kosto
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this sentencing memorandum and motion for downward departure was sent by electronic mail message to counsel for the defendant on October 14, 2016.

_/s/Seth B. Kosto_____________________
Seth B. Kosto
Assistant U.S. Attorney

Boston, Massachusetts
October 14, 2016